UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| COUNTY OF FALLS, Plaintiff, | ) ) ) |
| Vs | ) CASE NO.  6:18-cv-00047 ) |
| PURDUE PHARMA, L.P., ET AL., Defendants. | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION TO REMAND**

Plaintiff COUNTY OF FALLS, TEXAS filed a cause of action in Texas state court against the opioid manufacturers and distributors that caused its opioid addiction crisis. Despite knowing that the first named Defendant, Purdue Pharma, L.P., is a Texas resident, and without the consent of that Defendant, AMERISOURCEBERGEN CORPORATION, CARDINAL HEALTH, INC., and MCKESSON CORPORATION, the "Distributor Defendants," speciously removed Plaintiff's claim to federal court using arguments that have been recently rejected in another Texas county opioid case. The Distributor Defendants acknowledge that this Court does not have diversity jurisdiction over Plaintiff's claims as pled and do not allege that the non-diverse Defendant was fraudulently joined. Instead, they claim fraudulent misjoinder—a standard the Fifth Circuit has not adopted. The Distributor Defendants ask this Court to create diversity jurisdiction here by severing Plaintiff's claims against the Manufacturer Defendants, even where Plaintiff has alleged that "Manufacturing Defendants and Distributor Defendants worked hand and glove to glut the U.S. and Falls County with more opioids than would be consumed for therapeutic purposes." Doc. 1-1 at p. 14. Plaintiff asks this Court to reject the

Distributor Defendants' arguments[1] and would respectfully show the Court that this case should be summarily remanded.

I. INTRODUCTION

The United States is in the midst of an opioid epidemic caused by the fraudulent marketing, distribution, prescription, and sales of prescription opioids ("opioids") that has resulted in addiction, criminal activity, and loss of life. On January 4, 2018, Plaintiff COUNTY OF FALLS brought suit to recover damages based on the increased economic burden Falls County faces as a result of the Defendants' misconduct.

The Distributor Defendants have removed this case to federal court based on a specious argument that the manufacturers of the opioid drugs, "the Manufacturer Defendants," should be severed from Plaintiff's case against the Distributor Defendants to create federal jurisdiction. In the alternative, the Distributor Defendants argue that all of the Manufacturer Defendants were improperly joined. Manufacturer Defendant Purdue Pharma, L.P. is a Texas resident.[2]

Plaintiff Falls County respectfully requests that this Court determine *sua sponte* that it does not have subject matter jurisdiction and summarily remand this case back to state court. A review of Plaintiff's Petition, Doc. 1-1 at pp. 10-64, as well as the Notice of Removal reveals that there is no federal jurisdiction in this matter because there is not complete diversity. Also,

---

[1] In response to the notice of removal filed in a sister case, *County of Hopkins v. Purdue Pharma, L.P., et al.,* Plaintiff's counsel prepared a Motion to Remand, and on December 20, 2017, Judge Mazzant granted Plaintiff's Motion to Remand, noting that "complete diversity [was] lacking and remand [was] proper." **Ex. A**, Memorandum Opinion and Order Granting Plaintiff's Motion to Remand, Dec. 20, 2017. Specifically, the Order noted, "one of the Manufacturer Defendants is a Texas citizen." That same Manufacturer Defendant (Purdue Pharma, L.P.) is also being sued in *County of Falls,* and did not consent to removal.

[2] Manufacturer Defendant Purdue Pharma, L.P. did not consent to removal and is a Texas resident. *See* **Ex. B** Endo Health Solutions, Inc. and Endo Pharmaceuticals Inc.'s Response to Plaintiffs' Motion to Remand in the Hopkins County case (On December 18, 2017 – after this case was removed and after the telephone conference with this Court on December 15 – Endo learned that one of the members up the chain of ownership of Purdue Pharma L.P. (one of the alleged 'Manufacturer Defendants') was potentially as resident of Texas, which was then confirmed on December 19. Accordingly, Endo no longer directly opposes remanded because the grounds for removal depended on the diversity of all 'Manufacturer Defendants' from Plaintiff.").

2

Texas resident Defendant, Purdue Pharma, L.P., has not consented to removal. A timely ruling upon Plaintiff's motion to remand is essential. If this motion is not ruled upon in very short order, the case will be automatically transferred to the Multidistrict Litigation Docket No. 2804 in the Northern District of Ohio, which is the Distributor Defendants' express goal. The national strategy for these pharmaceutical defendants is to slow the resolution of these cases and control their placement.[3] This case was properly filed in state court, and Falls County should not be unfairly swept up in the national litigation.

Furthermore, Distributer Defendants have not met their burden of proving that a Rule 21 severance is necessary, or even allowable because: (1) a severance to create diversity jurisdiction would contravene Federal Rule of Civil Procedure 82; and (2) Plaintiff will be prejudiced by any severance as it will be forced to pursue its lawsuit in two different courts, may face an "empty chair" argument with different defendants in different cases, and risks inconsistent or conflicting judgments.

Moreover, Distributor Defendants have failed to meet their heavy burden of establishing improper joinder because: (1) Plaintiff's petition adequately states claims against the Distributor Defendants for having engaged in a concerted and coordinated scheme with Manufacturer Defendants, including but not limited to Purdue Pharma, L.P., to sell opioids to, and in, Falls County for foreseeable misuse, overuse, and criminal diversion; (2) the Manufacturer Defendants—including Texas Resident Purdue Pharma, L.P.—are indispensable parties to allow full and just adjudication of Plaintiff's claims where each group of Defendants will blame the other for the opioid epidemic in Falls County; and (3) Defendants cannot establish fraudulent joinder of the Texas Defendant because Plaintiff has pleaded facts that fully support a possibility of recovery and do not reflect an "egregious, totally unsupported or…purposeful attempt to

---

[3] In fact, the MDL Court issued a ruling that all ligation is stayed pending settlement negotiations.

defeat removal." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins.*, 670 F. Supp. 2d 555, 562-63 (N.D. Tex. 2009).

## II. FALL COUNTY DESERVES A PROMPT RULING ON THE MOTION TO REMAND.

As Distributor Defendants have made clear, if this case remains in federal court, it will be transferred to Multidistrict Litigation Docket No. 2804 in the Northern District of Ohio, where there is a "moratorium on all substantive filings," including motions to remand.[4] Thus, should the case be case be transferred to the MDL, it appears that the question of subject matter jurisdiction over Plaintiff's claims would not be considered—at least for some significant, and indeterminate, amount of time.

Diversity jurisdiction in the federal courts is carefully limited, and subject matter jurisdiction may be challenged at any time. *Ziegler v. Champion Mtge. Co.*, 913 F.2d 228, 229 (5th Cir.1990) (court of appeals raised jurisdictional issue on its own motion and determined that, because there was not complete diversity, the federal courts had never obtained subject matter jurisdiction and judgment had to be vacated); *see also* 28 U.S.C.S. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Judge Polster has recognized this fact, noting that "upon lifting of the moratorium by subsequent order of th[e] court, the parties shall be allowed to file motions to remand without waiver of any rights or obligations related to timeliness."[5] But the fact that Plaintiff might one day be allowed to present a motion to remand in the MDL does not adequately protect the County's rights. Falls County's claims do not belong in federal court, and they should not be held in the MDL without subject matter jurisdiction. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 n.16(5th Cir.1995) ("It is also consistent with

---

[4] *See* **Ex. C**, Order Involving Remands dated February 16, 2018, *In re Nat'l Prescription Opiate Litig.*
[5] **Ex. C**, Order Involving Remands.

4

Congress' intent to resolve swiftly removal issues, as reflected in the removal and remand statutes, 28 U.S.C. §§ 1446-1447").

Because there is not complete diversity, this Court does not have subject matter jurisdiction over Plaintiff's claims now. Neither will it have subject matter jurisdiction over the case at some hypothetical future date when Judge Polster's moratorium is lifted. Waiting to consider the question of remand would be a tremendous waste of judicial resources and of the parties' time. After all, if the federal courts did not have subject matter jurisdiction, any rulings in the federal court could not be binding during litigation of the claims in state court. *Cf. Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987) ("A judgment is void … if the court lacked jurisdiction over the subject matter or the parties"). This cannot be a good outcome for either the parties or the Court because, although Hopkins County would retain the right to challenge the subject matter jurisdiction of this Court whenever the moratorium is lifted, "to delay justice is injustice."[6]

### III.  DEFENDANTS HAVE THE BURDEN TO ESTABLISH THAT REMOVAL JURISDICTION IS APPROPRIATE.

It is axiomatic that federal courts have limited jurisdiction, having power only over those cases authorized by the United States Constitution and federal statutes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The burden of establishing federal jurisdiction falls on the defendants seeking removal, and the removal statute is strictly construed against removal jurisdiction because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *see also Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Any doubt as to the right of removal is resolved in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339

---

[6] William Penn, *Some Fruits of Solitude* 86 (London: Headley Bros., 1905).

(5th Cir. 2000); *Cross v. Bankers Multiple Line Ins. Co.*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

## IV.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NOT COMPLETE DIVERSITY.

### A.   Plaintiff Would Be Prejudiced by the Dismissal of the Manufacturer Defendants, and Distributor Defendants and Have Not Shown that the Manufacturer Defendants Are Dispensable Parties under Rule 21.

In their Notice of Removal, the Distributor Defendants ask this Court to artificially construct subject matter jurisdiction by severing the claims of the other defendants under Rule 21.  "While Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent. "*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2016 U.S. Dist LEXIS 110644, *20 (E.D. La. 2016) (emphasis added).  In these situations, the Supreme Court has stated that Rule 21 should only be used sparingly and the court should "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 838 (1989).  Moreover, Rule 21 severance of claims is also limited by Federal Rules Civil Procedure 82 which states: "These rules do not extend or limit the jurisdiction of the district courts." FED. R. CIV. P. 82; *Echols v. Omni Med. Group, Inc.*, 751 F. Supp. 2d 121, 1215 (N.D. Ok. 2010).

Prejudice to the plaintiff is a compelling reason to refuse severance under Rule 21. In *Xarelto*, the presiding MDL judge refused to sever the medical malpractice claims against the local defendants from the products liability claim against the national drug manufacturer. *In re Xarelto*, 2016 U.S. Dist. LEXIS at *21.  Citing *Newman-Green*, the *Xarelto* court found that creating diversity jurisdiction through a Rule 21 severance would prejudice the plaintiffs because

the plaintiffs had a "strong strategic interest" in playing the defendants against each other and severance would force the plaintiffs to face an empty chair at the state court proceedings. *Id.*

In this case, Plaintiff's argument against severance is even more compelling. The presence of the drug manufacturers is necessary for a just adjudication because complete relief may not be possible in their absence. FED. R. CIV. P. 19(a). Allegations against the Distributor Defendants are intertwined with those against the Manufacturer Defendants because they profited from distributing these fraudulently marketed drugs into communities and knowingly failed to report or halt the increase in opioid distribution and/or sale. Doc. 1-1 at pp. 60-61. Indeed, all Defendants shared the self-interest and motivation to manufacture, distribute, and prescribe the same medications to increase their own profits, and the Plaintiffs have alleged that Manufacturing Defendants engaged in a financial scheme with the Distributor Defendants and Dealer Defendants. Doc. 1-1 at pp. 14-15, 60-61. The Distributor Defendants had the perspective to see what was happening, as opioid prescriptions skyrocketed and they shuffled increasing supplies of opioid from the manufacturers into Falls County. Their own financial gain came at the expense of the County's coffers. *See, e.g.*, Doc. 1-1 at pp. 60-61.

Thus, the bad acts by *all* Defendants created and fed the opioid crisis in this country and in Falls County in particular, and caused Plaintiff to incur substantial economic expense in health care costs, additional police costs, and other consequences of the public health crisis engendered by Defendants. While Defendants may deny Plaintiff's claims in some future pleading, the dispositive point here is that Plaintiff expressly alleges collusion and connection between the Distributor Defendants and the Manufacturer Defendants: indeed, the Distributor Defendants are the *channel through which opioids wrongfully flowed from the Manufacturer Defendants to Falls County*. Plaintiff has pleaded these connections between the non-resident Distributor Defendants

and the Manufacturer Defendants, including resident Defendant Purdue Pharma, L.P., in its Original Petition. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995) (whether removal was proper must be determined based on allegations in the complaint as it existed at the time of removal). The claims against the Distributor Defendants could not be fully and justly adjudicated if the Manufacturer Defendants were missing, and the cases against the Manufacturer Defendants cannot be fully and fairly heard without the presence of the Distributor Defendants.

The cases upon which Defendants rely do not change this analysis. Those cases contrast claims against manufacturers for defective products with *medical malpractice claims* against health care providers. For example, in *Joseph v. Baxter International,* the district court found that doctors who prescribed Heparin despite a note in the patient's chart noting her allergy to the drug were not indispensable parties in a case against the same drug manufacturer for its conduct in designing, manufacturing, labeling, and recalling tainted Heparin. 614 F. Supp. 2d 868, 872 (N.D. Ohio 2009) The claim against the doctors would be viable even if Heparin held no risks to those patients without an allergy, and the allegations of medical malpractice were truly distinct from the products liability claims. *See, e.g.*, *Sullivan v. Calvert Mem. Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015) (finding that doctors, against whom the plaintiff alleged medical malpractice in selecting and implanting a medical device, were dispensable parties in a products liability suit alleging improper design, manufacture, testing, and marketing of the device); *Kelly v. Aultman Physician Ctr.*, No. 5:13CV0994, 2013 WL 2358583, at *3 (N.D. Ohio May 29, 2013); *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3-4 (N.D. Ohio Jul. 8, 2009); *Lucas v. Springhill Hosps., Inc.*, No. 1:09HC60016, 2009 WL 1652155, at *2 (N.D. Ohio Jun. 11, 2009).

Plaintiff's claims against the Texas Defendants do not rest on allegations of medical negligence. Rather, the claims against *all* Defendants, including Texas resident Purdue Pharma, L.P., involve public nuisance, negligence, and fraud, and misrepresentation in marketing, distributing, selling and prescribing opioids. *See generally* Doc 1-1 at pp. 10-64. Moreover, if Distributor Defendants are not present in the state action, the Manufacturer Defendants, will be able to point the finger at those Distributor Defendants as the responsible parties for creating the opioid epidemic. These empty chairs will prejudice Plaintiff in receiving a full and fair adjudication. *Cf. In re Xarelto*, 2016 U.S. Dist. LEXIS at *21 (finding that Rule 21 severance would prejudice plaintiffs, who had "strong strategic interest" in playing defendants against each other and avoid an empty chair at the state court proceedings.) The Texas Defendants are therefore indispensable parties and cannot be severed to create complete diversity.

**B. Defendants Have Not Met the Heavy Burden of Demonstrating that the Texas Defendant Is Improperly Joined.**

The burden of proving improper joinder is a "heavy one." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). A claim of fraudulent joinder must be stated with particularity, supported by clear and convincing evidence, and proven with "certainty." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). If there is *any* doubt as to whether a plaintiff states a claim against the non-diverse defendant, the joinder is not fraudulent. *See Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962).

There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Here, Defendants do not dispute that Defendants Purdue Pharma, L.P. is a Texas citizen, just like Plaintiff.

9

Therefore, since there is no allegation that Plaintiff's jurisdictional facts were fraudulently pled, the second test for improper joinder is the only one at issue. *See id.* at 647.

The Fifth Circuit held that "the test for fraudulent joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added). To determine whether there is any reasonable possibility of recovery against the in-state defendants, district courts may conduct a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim against the in-state defendants under state law. *See id.*; *see also Travis*, 326 F.3d at 648 (noting that the test for improper joinder is adopted from the Rule 12(b)(6) standard). "**Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder**." *Smallwood*, 385 F.3d at 573 (emphasis added); *see also Bopp v. Westchester Surplus Lines Ins. Co.*, No. 09-6448, 2009 WL 3763921 (E.D. La. Nov. 9, 2009) (holding that the defendant failed to show improper joinder when the allegations in the plaintiff's complaint were sufficient to state a claim for relief against the non-diverse defendant).

Here, the detailed allegations in Plaintiff's complaint would easily defeat a Rule 12(b)(6) motion to dismiss, and are therefore sufficient to show that Texas Defendant Purdue Pharma, L.P. is properly joined in this case. In fact, Defendants do not allege that the Plaintiff fails to state a claim against Purdue Pharma, L.P. and the other Manufacturer Defendants, a virtual concession that defeats a finding of fraudulent joinder.

Defendants ignore the standard applied to claims of fraudulent joinder in the Fifth Circuit and their citation of district court rulings apparently applying different standards cannot help the

Court make the necessary determination in this case. Under the standard expressly established by the Fifth Circuit, the Texas Defendants are not fraudulently joined in this case because Plaintiff has stated viable claims against them.

Defendants note, as some district courts have, that the Fifth Circuit has cited *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996). While this is true, the court did not cite *Tapscott* as the standard for fraudulent misjoinder and **did not adopt the standard**. Rather, the court cited *Tapscott* in noting that joinder might be improper even when it was *not* fraudulent. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 and n.5 (5th Cir. 2006). The court did not change the standard for fraudulent misjoinder, although some Texas district courts have addressed fraudulent joinder claims under the *Tapscott* or modified standards.

Even under the *Tapscott* standard, however, the Texas Defendants are not fraudulently joined. To justify a finding of fraudulent joinder under *Tapscott* "[t]he joined parties and claims must be without a palpable connection, causing the joinder to be egregious, totally unsupported or a purposeful attempt to defeat removal." *Wells Fargo*, 670 F. Supp. 2d 562-63 (N.D. Tex. 2009). Again, as shown above, Plaintiff has alleged that "Manufacturing Defendants and Distributor Defendants worked hand and glove to glut the U.S. and Falls County with more opioids than would be consumed for therapeutic purposes." Doc. 1-1 at p. 14. Distributor Defendants profited by selling the manufacturers' fraudulently marketed opioids into Falls County at levels they knew were not justified by any valid therapeutic demand. The claims against Manufacturer Defendants are both factually and legally intertwined with the claims against the Distributor Defendants.

Under any potentially relevant standard, then, the Texas Defendant and the other Manufacturer Defendants are not fraudulently joined. The claims against them are viable and

fully supported, and the claims against them are not made for the purpose of defeating removal. Texas Defendant Purdue Pharma, L.P. and the other Manufacturer Defendants are indispensable parties to a full and just adjudication of Plaintiff's claims, and the case should be remanded to state court for their full participation in the case.

## V.  CONCLUSION

Remand is required because there is not complete diversity among all parties, depriving this Court of subject matter jurisdiction. Plaintiff Falls County and Manufacturer Defendant Purdue Pharma, L.P. are Texas citizens. Plaintiff therefore requests that this case be summarily remanded to state court.

Dated:  February 16, 2018

Respectfully submitted,

*/s/Craig Brown*
Craig Brown
Texas State Bar No. 24034343
**CAPPOLINO DODD KREBS LLP**
312 S. Houston Avenue
Cameron, Texas 76520
254-697-4965


**FULBRIGHT WINNIFORD**
Dan N. MacLemore
Texas State Bar No. 24037013
425 Austin Avenue, 22nd Floor
Waco, Texas 76701
254-776-6000
254-776-8555 fax
dmaclemore@fulbrightlaw.com


**SIMON GREENSTONE PANATIER BARTLETT, P.C.**

Jeffrey B. Simon

TX State Bar No. 00788420
Amy M. Carter
TX State Bar No. 24004580
Misty A. Farris
TX State Bar No. 00796532
Heather V. Davis
TX State Bar No. 24092324
3232 McKinney Avenue, Suite 610
Dallas, Texas 75204
214-276-7680
214-276-7699 fax
jsimon@sgpblaw.com
acarter@sgpblaw.com
mfarris@sgpblaw.com
hdavis@sgpblaw.com

## CERTIFICATE OF SERVICE

I hereby certify on the 16th day of February, 2018, a copy of the foregoing document was served on all counsel of record via the Court's ECF system.

/s/Craig Brown
Craig Brown